James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   jshea@shea.law
         blarsen@shea.law
         kwyant@shea.law

*Attorneys for Chapter 11 Debtor*
*and Debtor in Possession Banq Inc.*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

BANQ INC.,

                    Debtor.

Case No.  23-12378-nmc

Chapter 11 Case

Subchapter V

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
## (SUBCHAPTER V)

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   DEFINED TERMS AND RULES OF INTERPRETATION................................... 1

   A.   Defined Terms. ................................................................................... 1

   B.   Rules of Construction. ....................................................................... 7

III.   STATUTORY PLAN DISCLOSURES ........................................................... 8

   A.   Brief History of the Business Operations of the Debtor ...................... 8

   B.   Liquidation Analysis ....................................................................... 10

      1.   Assumptions and Disclaimers................................................. 10

      2.   Hypothetical Liquidation Analysis .......................................... 12

      3.   Notes and Assumptions.......................................................... 12

   C.   Plan Projections .............................................................................. 13

IV.   ADMINISTRATIVE AND PRIORITY TAX CLAIMS ...................................... 15

   A.   Administrative Claims. .................................................................... 15

      1.   Bar Date for Administrative Claims. ....................................... 16

      2.   Professional Compensation and Reimbursement Claims. .......... 16

   B.   Priority Tax Claims.......................................................................... 16

V.   DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS ..................... 16

   A.   Summary of Classifications and Claims. ........................................... 16

   B.   Classification and Treatment of Claims and Equity Interests.............. 17

      1.   Class 1 – Secured Claim of NVF, LLC. ................................... 17

      2.   Class 2 – Unsecured Convertible Promissory Note Payable to N9 Advisors, LLC. ..... 18

      3.   Class 3 – General Unsecured Claims........................................ 18

      4.   Class 4 – Equity Interests in the Debtor................................... 19

VI.   ACCEPTANCE OR REJECTION OF THE PLAN ......................................... 19

   A.   Deemed Acceptance of the Plan. ...................................................... 19

   B.   Voting Classes. ............................................................................... 19

- i -

C.    Acceptance by Impaired Classes of Claims..................................................... 19

D.    Confirmation in Spite of Rejection of Plan..................................................... 19

E.    Elimination of Vacant Classes. ...................................................................... 19

VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 20

A.    Assumption of Executory Contracts and Unexpired Leases............................ 20

1.    Assumption of Agreements..................................................................... 20

2.    Cure Payments. ...................................................................................... 20

3.    Objections to Assumption/Cure Payment Amounts. ................................. 20

4.    Resolution of Claims Relating to Contracts and Leases............................ 21

B.    Rejections of Executory Contracts and Unexpired Leases. ............................. 21

1.    Rejected Agreements. ............................................................................ 21

2.    Bar Date for Rejection Damage Claims.................................................... 21

3.    Post-petition Contracts and Leases. ........................................................ 21

VIII.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN..................... 21

A.    Means of Effectuating the Plan...................................................................... 21

1.    Funding for the Plan............................................................................... 22

2.    New Corporate Existence. ...................................................................... 22

3.    Vesting of Assets. .................................................................................. 22

4.    Issuance and Distribution of New Equity Interests................................... 22

5.    Securities Registration Exemption........................................................... 23

6.    Certificate of Incorporation and Bylaws.................................................. 23

7.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer
Taxes..................................................................................................... 23

IX.    DISTRIBUTIONS UNDER THE PLAN ............................................................... 23

A.    Distributions for Claims Allowed as of the Effective Date. ............................. 23

B.    Distributions on Account of Claims Allowed After the Effective Date. ........................ 24

1.    Payments and Distributions on Disputed Claims....................................... 24

2.    Special Rules for Distributions to Holders of Disputed Claims. ................. 24

C.     Delivery and Distributions and Undeliverable or Unclaimed Distributions.................... 24

    1.     Record Date for Distributions. .......................................................................... 24

    2.     Delivery of Distributions in General.................................................................. 24

    3.     Distributions by Distribution Agents. ................................................................ 25

    4.     Minimum Distributions. ..................................................................................... 25

    5.     Undeliverable Distributions. .............................................................................. 25

D.     Compliance with Tax Requirements/Allocations. ..................................................... 26

E.     Timing and Calculation of Amounts to Be Distributed. ........................................... 27

F.     Setoffs. ...................................................................................................................... 27

X.     PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ......................................................................................................................... 27

A.     Resolution of Disputed Claims. ................................................................................ 27

    1.     Allowance of Claims. ......................................................................................... 27

    2.     Prosecution of Objections to Claims.................................................................. 28

    3.     Claims Estimation. ............................................................................................. 28

    4.     Expungement or Adjustment to Claims without Objection. ................................ 28

    5.     Deadline to File Objections to Claims. ............................................................... 28

B.     Disallowance of Claims. ........................................................................................... 28

C.     Amendments to Claims. ............................................................................................ 29

XI.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............................................................................................................................. 29

A.     Conditions Precedent to Confirmation...................................................................... 29

B.     Conditions Precedent to Consummation. .................................................................. 29

C.     Waiver of Conditions. ............................................................................................... 30

D.     Effect of Non-Occurrence of Conditions to Consummation. ................................... 30

XII.   SETTLEMENT RELEASE AND RELATED PROVISIONS...................................... 30

A.     Compromise and Settlement. .................................................................................... 30

B.     Preservation of Rights of Action............................................................................... 31

    1.     Maintenance of Causes of Action. ..................................................................... 31

2.    Preservation of All Causes of Action Not Expressly Settled or Released. ................... 31

3.    Third Party Release ......................................................................................... 31

XIII.    EFFECT OF PLAN CONFIRMATION BINDING NATURE OF THE PLAN ............ 32

A.    Discharge Injunction. ................................................................................................. 32

XIV.    RETENTION OF JURISDICTION ................................................................................. 33

XV.    MISCELLANEOUS PROVISIONS ................................................................................ 34

A.    Payment of Statutory Fees. ........................................................................................ 34

B.    Modification of Plan. ................................................................................................. 34

C.    Revocation of Plan. ................................................................................................... 34

D.    Successors and Assigns. ............................................................................................ 35

E.    Reservation of Rights. ............................................................................................... 35

F.    Section 1146 Exemption. ........................................................................................... 35

G.    Further Assurances. ................................................................................................... 35

H.    Severability. ............................................................................................................... 35

I.    Service of Documents. ............................................................................................... 36

J.    Filing of Additional Documents. ............................................................................... 36

K.    Default. ....................................................................................................................... 36

# I.    INTRODUCTION

Banq Inc., a Florida corporation (the "Debtor"), is the debtor and debtor in possession in the above-captioned chapter 11, subchapter V, bankruptcy case (the "Bankruptcy Case") bearing case number 23-12378.  The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and elected subchapter V on June 13, 2023 (the "Petition Date"). The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code. The United States Trustee (the "UST") appointed _____ as the subchapter V trustee (the "Trustee") pursuant to 11 U.S.C. § 1183(a).

Chapter 11 subchapter V allows the Debtor (and only the Debtor) to propose a plan.  This Plan is a reorganization plan proposed by the Debtor.  **This document is the Plan**.  It includes (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan. This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## II.    DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms.

Administrative Claim:  A Claim for costs and expenses of administration pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including, without limitation: (i) the actual and necessary costs and expenses of the Estate incurred after the Petition Date; (ii) Allowed Professional Claims; and (iii) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

Administrative Claim Bar Date:  The deadline for filing requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of Article IV.B.

Affiliate:  As defined at section 101(2) of the Bankruptcy Code.

Allowed:  Except as otherwise provided herein:  (i) a Claim or Interest that is (a) listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, or (b) evidenced by a valid Proof of Claim filed by the applicable Bar Date and as to which the Debtor, or other parties in interest have not filed an objection to the allowance thereof within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) a Claim that is Allowed pursuant to the Plan or any stipulation approved by, or Final Order of, the Bankruptcy Court.

Articles of Incorporation:  The articles of incorporation of the Debtor, as amended, as of the Petition Date, which shall also be adopted by and apply to the Reorganized Debtor except as expressly amended pursuant to the Plan.

Assets:  All of the Debtor's right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

Avoidance Actions:  Any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Bankruptcy Code sections 544, 547, 548, 550, 551, 552, or 553.

Ballot:  The form of ballot provided to Holders of Claims or Interests pursuant to Bankruptcy Rule 3017(d) by which each Holder may accept or reject the Plan.

Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as may be amended from time to time.

Bankruptcy Court:  The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case and to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or order of a district court pursuant to section 157(a) of title 28 of the United States Code, the United States District Court for the District of Nevada.

Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

Business Day:  Any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

Bylaws:  The bylaws of the Debtor, as amended, as of the Petition Date, which shall also be adopted by and apply to the Reorganized Debtor except as expressly amended pursuant to the Plan.

Cash:  The legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

Causes of Action:  means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

Chapter 11 Case:  The Chapter 11 case pending for the Debtor under Chapter 11 of the Bankruptcy Code before the Bankruptcy Court.

Claim:  As defined in Bankruptcy Code section 101(5).

Claimant:  A Holder of a Claim.

Claims Bar Date:  As applicable, (i) [date], (ii) the Governmental Bar Date or (iii) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

Claims Objection Bar Date: For each Claim, the later of (i) 180 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided, however*, that in no event shall the Claims Objection Bar Date be greater than 180 days after the Effective Date with respect to any General Unsecured Claim in Class 3.

Claims Register: The official register of Claims maintained by the Bankruptcy Court.

Class:  A category of Holders of Claims or Interests pursuant to Bankruptcy Code section 1122(a).

Confirmation:  The entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified having been satisfied or waived.

Confirmation Date:  The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

Confirmation Hearing: The hearing before the Bankruptcy Court pursuant to Bankruptcy Code section 1128 on the motion for entry of the Confirmation Order.

Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

Consummation:  The occurrence of the Effective Date.

Court: The Bankruptcy Court.

Creditor:  As defined in Bankruptcy Code Section 101(10).

Disputed Claim:  Any Claim or Interest that is not yet Allowed.

Disallowed Claim:  A Claim against the Debtor that: (i) is not listed on the Schedules, or is listed therein as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder has failed to timely File a proof of claim; or (ii) has been disallowed pursuant to order of the Bankruptcy Court.

Distribution Agent:  The Debtor or Reorganized Debtor shall serve as the Distribution Agent under the Plan.

Distribution Date:  The earlier of (i) the date that is the first Business Day of the month which is at least thirty (30) days after the date on which the Purcell Litigation Claims are settled or otherwise resolved through the entry of a final judgment and the net proceeds of the Purcell Litigation Claims, if any, are received by the Debtor or Reorganized Debtor and are available for payment of the Litigation Proceeds Distribution or (ii) October 31, 2026.

Distribution Record Date:  The date for determining which Holders of Claims are eligible to receive distributions under the Plan, which shall be set by order of the Bankruptcy Court.

Effective Date:  The date that is the first Business Day of the month which is at least thirty (30) days after the Confirmation Date on which: (i) no stay of the Confirmation Order is in effect; and (ii) all conditions precedent to the Effective Date have been satisfied or waived.

Entity:  As defined in Bankruptcy Code section 101(15).

Event of Default:  A material failure of the Debtor or Reorganized Debtor to fulfill the obligations required under this Plan after the Effective Date.

Equity Interest:  Any partnership, membership, or other equity interest in the Debtor or the Reorganized Debtor.

Estate:  The bankruptcy estate of the Debtor created pursuant to Bankruptcy Code Sections 301 and 541 upon the commencement of the Chapter 11 Case.

Executory Contract:  A contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 or 1123.

Fee Claim:  A Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5).

File:  To file with the Bankruptcy Court or its authorized designee in this Chapter 11 Case

Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

Final Order:  An order or judgment of the Bankruptcy Court or other court or competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

Governmental Bar Date: [date].

Governmental Unit:  As defined in section 101(27) of the Bankruptcy Code.

Guaranteed Distribution:  The distribution on a Pro Rata basis to Holders of Allowed Class 2 Claims and Allowed Class 3 Claims of a fixed amount of $45,000 paid on the Distribution Date in the event that no net proceeds of the Purcell Litigation Claims or other Causes of Action are available for distribution through the Litigation Proceeds Distribution on or before October 31, 2026 in which case the Guaranteed Distribution shall be the sole distribution Holders of Allowed Class 2 Claims and Allowed Class 3 Claims shall be entitled to receive under the Plan.

Holder:  A Person holding a Claim or Interest.

Impaired:  With respect to any Class of Claims or Interests, a Claim or Interest that is not Unimpaired.

Insider:  As defined in Bankruptcy Code section 101(31).

Interest:  Any Equity Interest in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto, whether or not fully-vested or vesting in the future, that existed immediately before the Effective Date.

Lien:  As defined in Bankruptcy Code section 101(37).

Litigation Proceeds Distribution:  The distribution on a Pro Rata basis to Holders of Allowed Class 2 Claims and Allowed Class 3 Claims of the net proceeds, if any, of any recovery realized by the Debtor or Reorganized Debtor on account of the Purcell Litigation Claims remaining after payment of all attorney fees, including contingency fees, and litigation costs relating to the pursuit of the Purcel Litigation Claims and after payment of the New Secured Loan and all other indebtedness secured by the Purcell Litigation Claims.

Local Rules:  The Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

New Equity Interests:  The equity interests in the Reorganized Debtor to be authorized, issued, or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the equity interests in the Reorganized Debtor.

New Secured Loan:  The refinanced (restructured) secured loan pursuant to the terms of the Plan to be evidenced by the New Secured Loan Documents.

New Secured Loan Documents: The New Secured Note and related documents in form and substance acceptable to and approved by the Secured Lenders evidencing, securing and providing for the terms and conditions of the New Secured Loan, to be executed by and between the Secured Lender and Reorganized Debtor on or as of the Effective Date, in substantially the form of the loan documents with respect to the NVF Loan with any modifications or additional documents in form and substance acceptable to and approved by the Secured Lender that shall be secured by a first-priority Lien and perfected security interest in all personal property of the Reorganized Debtor, including, without limitation, the Purcell Litigation Claims.

New Secured Note:  The secured promissory note to be executed by the Reorganized Debtor and payable to the Secured Lender evidencing the Reorganized Debtor's repayment obligations relating to the New Secured Loan.

NVF Loan:  The pre-Petition Date loan made to the Debtor by NVF, LLC in the principal amount of approximately $225,000 that is secured by a first-priority Lien and perfected security interest in all personal property of the Debtor, including, without limitation, the Purcell Litigation Claims and all other Causes of Action.

Person:  As defined in Bankruptcy Code section 101(41).

Petition Date:  June 13, 2023.

Plan:  The Plan Proponent's Chapter 11 plan as it may be altered, amended, modified, or supplemented from time to time, including any and all exhibits, supplements, appendices, and schedules.

Plan Proponent:  Banq Inc.

Priority Claim:  A Priority Tax Claim or other Claim against the Debtor that is not an Administrative Claim or Secured Claim but is asserted by the Holder of the Claim to be entitled to priority under any applicable provision of 11 U.S.C. § 507.

Priority Tax Claim:  Any Claim of a Governmental Unit of the kind specified in 11 U.S.C. § 507(a)(8).

Professional Compensation:  All accrued fees and expenses for services rendered by all Professionals through and including the Confirmation Date to the extent any such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses.  To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Professional Compensation.

Proof of Claim:  A proof of Claim filed against the Debtor in the Chapter 11 Case.

Pro Rata:  The proportion that an Allowed Claim in a particular Class or combined Classes bears to the aggregate amount of Allowed Claims in that Class or combined Classes, or the proportion that a Holder's portion of an Allowed Claim of a particular Class or combined Classes bears to the aggregate Allowed Claim of that Class or combined Classes.

Purcell Litigation Claims:  All Causes of Action held by the Debtor against Scott Purcell, Kevin Lehtiniitty, George Georgiades, Fortress NFT Group, Inc., Planet NFT, Inc., N9 Advisors, LLC, Ayon Capital, LLC, or any other Person or Entity arising out of or relating to the facts alleged in the complained filed by the Debtor in the United States District Court for the District of Nevada on or about May 16, 2022 as Case No. 2:22-cv-00773-APG-VCF, including all claims for relief set forth therein.

Rejection Damage Claim: A Claim against the Debtor arising under Bankruptcy Code section 365 from the rejection by the Debtor of an unexpired lease or executory contract Reorganized Debtor:  The Debtor on and after the Effective Date, after giving effect to the Plan.

Reorganized Debtor:  The Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

Retained Professional:  A professional: (i) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with Bankruptcy Code sections 327 and 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, and 331; or (ii) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

Schedules:  The schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules.

Schedule of Assumed Agreements: The schedule of executory contracts and unexpired leases that the Debtor will assume on the Effective Date, which is attached to the Plan as Exhibit A.

Secured Claim:  A Claim:  (i) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with Bankruptcy Code section 506(a) or (ii) subject to a valid right of setoff pursuant to Bankruptcy Code section 553.

Secured Lender: NVF, LLC.

Secured Tax Claim:  Any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of time limitations), including any related Secured Claim for penalties.

Securities Act:  The Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

Subchapter V Trustee:  [name] as appointed by the Office of the United States Trustee on [date].

Unexpired Lease:  A lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 or 1123.

Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of Bankruptcy Code section 1124.

Unsecured Claim: Any Claim against the Debtor that is neither a Secured Claim nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court.

U.S. Trustee:  The Office of the United States Trustee for the District of Nevada.

U.S. Trustee Fees:  Fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

Voting Deadline:  The date which shall be the final date by which a Holder of a Claim may vote to accept or reject the Plan.

Voting Record Date:  The date for determining which Holders of Claims are entitled to vote to accept or reject the Plan.

**B.      Rules of Construction.**

1.      The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent herewith.

2.      Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in any other document Filed with the Bankruptcy Court.

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially negatively affected.

7.      Any reference to an existing document means the document as it has been or may be amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

9.      Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

10.      The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion hereof.

### III.      STATUTORY PLAN DISCLOSURES

Bankruptcy Code Section 1190(1) requires that a subchapter V plan include: (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan.  11 U.S.C. § 1190(1).

#### A.      Brief History of the Business Operations of the Debtor

The Debtor is a Nevada-based technology company established in 2019.  The Debtor was formed as a Florida limited liability company on July 9, 2019, and was later converted to a Florida corporation on September 23, 2019.  Prior to July 2022, the Debtor's principal place of business was located at 10845 Griffith Peak Drive, Suite 200, Las Vegas, Nevada.  The Debtor does not maintain a physical office at this time.  The Debtor's current mailing address is 7575 W. Washington Ave., Suite 127-118, Las Vegas, Nevada 89128.

The Debtor was formed for the purpose of developing a payments application and platform with cryptocurrency capabilities for consumers.  Among other things, this application and platform was intended to allow users to consolidate their financial assets, including United States dollars, Bitcoin, savings, peer-to-peer payments, and bank accounts within one single technology platform. The primary objective of the application and platform was to provide users with the ability to invest in and easily transfer cryptocurrency and other digital assets through personal, business, retirement, trust, or college savings accounts, as well as conduct peer-to-peer payments between users of the platform.  From its organization in 2019 through mid-2021, the Debtor invested substantially in the

research and development of technology for its payments application and platform, resulting in the creation of valuable, confidential, and proprietary technology and intellectual property in the financial, blockchain, and cryptocurrency space.

On or about May 13, 2021, the Debtor's then Chief Executive Officer and board member, Scott Purcell ("Purcell"), unilaterally and without obtaining the approval of the Debtor's board of directors notified the Debtor's shareholders that he was suspending all sales and marking efforts relating to the Debtor's application and platform just as it was beginning to generate revenue. Instead, Purcell advised that he was redirecting the Debtor's focus and resources towards the development of non-fungible token ("NFT") technologies, including an NFT wallet application with application programming interface ("API") capabilities.

Shortly thereafter, Purcell caused the Debtor to enter into a loan transaction with N9 Advisors, LLC ("N9 Advisors") on or about July 14, 2021, under which the Debtor executed a $3 million unsecured convertible promissory note payable to N9 Advisors (the "N9 Note").

Over the next few months, Purcell repeatedly assured the Debtor's board of directors and shareholders that this pivot was in the Debtor's best interests as the Debtor continued to make substantial investments towards the research and development of NFT-related technologies.  On or about December 15, 2021, however, Purcell unilaterally and without obtaining the approval of the Debtor's board of directors notified the Debtor's shareholders that he had decided to wind down the majority of the Debtor's business operations, citing a recent change to the Apple App Store terms and conditions relating to NFTs as the reason for his decision.

On or about December 19, 2021, Purcell resigned from his positions as the Debtor's Chief Executive Officer and as a member of the Debtor's board of directors.  The Debtor's Chief Technology Officer and Chief Product Officer, Kevin Lehtiniitty ("Lehtiniitty"), and the Debtor's General Counsel and Chief Compliance Officer, George Georgiades ("Georgiades"), also resigned from their positions at or around the same time as Purcell's resignation.

On or about January 11, 2022, the Debtor's board of directors appointed Josh Sroge ("Sroge") as interim Chief Executive Officer.  Shortly thereafter, Sroge discovered that Purcell, Lehtiniitty, and Georgiades had formed a new company in September 2021, Fortress NFT Group, Inc. ("Fortress"), to which they had secretly and unlawfully transferred the vast majority of the Debtor's employees, trade secrets, intellectual property, technology, business opportunities, and equipment, including the Debtor's computer systems containing the Debtor's electronic records relating to, among other things, its business assets, operations, proprietary information, and research and development efforts.  As a result of this misappropriation of the Debtor's assets, the Debtor was forced to temporarily suspend the majority of its day-to-day business operations and all research and development efforts relating to its application and platform.

On May 16, 2022, the Debtor filed a complaint (the "Nevada Action") in the United States District Court for the District of Nevada (the "District Court") against Purcell, Lehtiniitty, Georgiades, Fortress, and Planet NFT, Inc. ("Planet NFT" and together with Purcell, Lehtiniitty, Georgiades, and Fortress, the "Purcell Defendants").  Planet NFT was incorporated by Purcell and Georgiades as an affiliate of Fortress only a few days after Purcell announced his decision to wind down the Debtor.  The Debtor's complaint asserted claims for (1) violations of the Defend Trade Secrets Act, (2) violations of the Nevada Uniform Trade Secrets Act, (3) violations of the Computer Fraud and Abuse Act, (4) violations of Nev. Rev. Stat. § 205.4765, (5) conversion, (6) fraud, (7)

interference with prospective economic advantage, (8) breach of fiduciary duty, (9) aiding and abetting breaches of fiduciary duties, (10) negligence for spoliation, and (11) unjust enrichment. On January 17, 2023, the District Court entered an order granting a motion to compel the Debtor to arbitrate its claims against the Purcell Defendants based upon an alleged employment agreement that did not address any of the aforementioned claims or matters and dismissed the Nevada Action without prejudice.

The Debtor's efforts to resume business operations were further hindered by a separate Florida state court action (the "Florida Action") filed against the Debtor by N9 Advisors on or about September 7, 2022, relating to the N9 Note. N9 Advisors, which is the Debtor's largest unsecured creditor, is believed to be a substantial investor in Fortress.

As a result of the Purcell Defendants' misappropriation of the Debtor's assets and the expenses associated with defending against the claims of N9 Advisors in the Florida Action, the Debtor was left with insufficient resources to resume its business operations, to pay its creditors, to adjudicate arbitrability under the alleged employment agreement or, to pursue its claims against the Defendants through arbitration following the dismissal of the Nevada Action. Accordingly, the Debtor filed this Chapter 11 Case to reorganize its financial affairs as set forth in this Plan. The Debtor believes that the reorganization of its financial affairs under this Plan will allow it to pursue its claims against the Defendants to a favorable conclusion and to resume ordinary business operations.

### B.    Liquidation Analysis

In connection with the Plan, the following hypothetical liquidation analysis (the "Liquidation Analysis") has been prepared by the Debtor's management with the assistance of the Debtor's legal counsel. This Liquidation Analysis should be read in conjunction with the Plan. The Debtor has prepared this Liquidation Analysis for the purpose of evaluating whether the Plan meets the so-called "best interests" test under section 1129(a)(7) of the Bankruptcy Code, which requires that a bankruptcy court find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount such holder would recover if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

### 1.    Assumptions and Disclaimers

This Liquidation Analysis has been prepared assuming the Debtor's current Chapter 11 Case converts to chapter 7 liquidation under the Bankruptcy Code on or around July 31, 2023, and that the Debtor's assets are liquidated through a traditional liquidation process. It is further assumed that upon conversion of the Chapter 11 Case, a chapter 7 trustee would be appointed or elected to carry out the liquidation of all of the Debtor's assets. To maximize recovery, this liquidation is assumed to occur over a three-to-six-month period immediately after conversion of the Chapter 11 Case. Estimating recoveries in any hypothetical chapter 7 liquidation case is an uncertain process due to the number of unknown variables and is necessarily speculative. Thus, extensive use of estimates and assumptions has been made that, although considered reasonable by the Debtor's management and its legal counsel, are inherently subject to significant business, economic, and competitive uncertainties and other contingencies beyond the control of the Debtor.

THE DEBTOR MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS USED IN THIS LIQUIDATION ANALYSIS OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS.  IN THE EVENT THE CHAPTER 11 CASE IS CONVERTED TO CHAPTER 7 LIQUIDATION, ACTUAL RESULTS MAY VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS.

In preparing the Liquidation Analysis, the amount of Allowed Claims has been projected based upon a review of scheduled Claims and all Proofs of Claim, if any, associated with pre-petition and post-petition obligations.  Additional Claims were estimated to include certain post-petition obligations on account of which Claims have not been asserted, but which would likely be asserted in a hypothetical chapter 7 liquidation.  These potential Claims include, without limitation, Claims for obligations incurred during the Chapter 11 Case.  In the event litigation is necessary to resolve any Claim, the completion of the chapter 7 liquidation could be delayed considerably.  No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of any Claim at the estimated amount set forth in this Liquidation Analysis.

THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH IN THE LIQUIDATION ANALYSIS SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING, WITHOUT LIMITATION, ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS UNDER THE PLAN. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASE COULD MATERIALLY AND SIGNIFICANTLY DIFFER FROM THE AMOUNT OF CLAIMS ESTIMATED IN THE LIQUIDATION ANALYSIS.  NOTHING CONTAINED IN THIS HYPOTHETICAL LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTOR WITH REGARD TO ANY CLAIM.

## 2.    Hypothetical Liquidation Analysis

| Assets: | | |
|---|---|---|
| Cash on Hand: | $ | 5,000.00 |
| Internet Domain Names | $ | 10,000.00 |
| Software under Development | $ | 25,000.00 |
| Claims against Third Parties | $ | 150,000.00 |
| | $ | **190,000.00** |
| | | |
| | | |
| **Secured Claims:** | | |
| NVF, LLC | $ | (200,000.00) |
| | $ | **(200,000.00)** |
| | | |
| | | |
| **Total Net Liquidation Proceeds:** | $ | **(10,000.00)** |
| | | |
| **Chapter 7 Administrative Expenses:** | | |
| Chapter 7 Trustee Fees and Expenses | $ | (10,000.00) |
| Chapter 7 Trustee Attorney Fees | $ | (5,000.00) |
| Wind Down and Storage Costs | $ | (3,000.00) |
| Taxes and other Priority Claims | $ | (2,500.00) |
| | $ | **(20,500.00)** |
| | | |
| **Chapter 11 Administrative Expenses:** | | |
| Attorney Fees | $ | (10,000.00) |
| Subchapter V Trustee Fees | $ | (10,000.00) |
| Priority Tax Claims | $ | - |
| Non-Tax Priority Claims | $ | - |
| Administrative Claims | $ | (10,000.00) |
| | $ | **(30,000.00)** |
| | | |
| **Total Potential Proceeds Available to Unsecured Creditors:** | $ | **(60,500.00)** |
| | | |
| **Estimated Total Allowed Unsecured Claims:** | **$ 4,502,859.28** | |
| | | |
| **Estimated Percentage Payout to Unsecured Creditors in Chapter 7 Liquidation:** | | **0.00%** |

## 3.    Notes and Assumptions

a.    <u>Debtor's Software under Development</u>.  The Debtor believes that its application and platform constitutes valuable, confidential, and proprietary technology and intellectual property.  However, the development of such application and platform remains incomplete, and the Debtor's efforts to continue development have been severely hindered by the actions of the Purcell Defendants as described herein.  Furthermore, the ability to complete development of such application and platform is likely to require access to knowledge and resources that are not currently available to the Debtor and may not be available to any potential purchaser in the future.  Accordingly, the liquidation value of such application and platform is likely to be far less than its potential value upon completion of development by the Debtor.  Given the anticipated difficulty of completing the development of the Debtor's application and platform, the Debtor

believes that $25,000 is a fair and reasonable estimate of the amount a chapter 7 trustee might ultimately realize through the liquidation of the application and platform.

b. <u>Claims against Third Parties</u>. The Debtor believes it holds viable, valuable claims against the Purcell Defendants and possibly others arising from the misappropriation of the Debtor's trade secrets, intellectual property, technology, business opportunities, and equipment as described herein and as previously alleged by the Debtor in connection with the Nevada Action. However, the pursuit of such claims is likely to take one to two years or more to resolve and will require a substantial investment to pay necessary litigation costs in order to realize any recovery on such claims. Furthermore, the pursuit of such claims is likely to require the cooperation and assistance of various individuals associated with the Debtor without which it may not be feasible to pursue such claims.

In the event of a chapter 7 liquidation, the Debtor believes that there is a substantial likelihood that a chapter 7 trustee would assert claims against the Purcell Defendants and possibly others arising from the misappropriation of the Debtor's assets as described herein. Given the inherent uncertainty and expense of litigation and the difficulty a chapter 7 trustee would likely face in attempting to pursue such claims with limited or no assistance from individuals associated with the Debtor, the Debtor believes that $150,000 is a fair and reasonable estimate of the amount a chapter 7 trustee might ultimately recover from the pursuit of such claims. However, it is possible that the pursuit of such claims could yield significantly more or significantly less than $150,000.

a. <u>Secured Claim of NVF, LLC</u>. The Secured Claim of NVF, LLC is secured by a perfected security interest in all of the personal property of the Debtor. Accordingly, in the event of a chapter 7 liquidation, the liquidation proceeds would be applied first to payment of the Claim of NVF, LLC with any remaining proceeds then being applied towards payment of other Claims in order of priority as established under the Bankruptcy Code.

b. <u>Dependence on Unaudited Financial Statements</u>. This Liquidation Analysis contains estimates that are still under review, and it remains subject to further legal and accounting analysis.

## C. Plan Projections

In order for the Bankruptcy Court to confirm this Plan, the Debtor must demonstrate that it will have sufficient funding over the life of the Plan to make the required Plan payments and operate the Debtor's business. At this time, the Debtor has no regular, reoccurring source of revenue. Moreover, the Debtor believes it is unlikely that it will have any regular, reoccurring source of revenue during the three-year term of the Plan as Debtor's current business operations relate almost exclusively to the Debtor's pursuit of the Purcell Litigation Claims through which the Debtor seeks to recover monetary damages and other relief based on the misappropriation of the Debtor's trade secrets, technology and business records by the Purcell Defendants as generally alleged by the Debtor in connection with the Nevada Action.

The Debtor has engaged the law firm of Diamond McCarthy LLP ("<u>Litigation Counsel</u>") to act as special litigation counsel with respect to the pursuit of the Purcell Litigation Claims. Litigation Counsel has agreed to represent the Debtor and Reorganized Debtor in pursuing the Purcell Litigation Claims on a contingency basis subject to the terms and conditions set forth in the *Application for Order Authorizing and Approving the Retention and Employment of Diamond*

*McCarthy LLP as Special Litigation counsel for Debtor Banq Inc.* [ECF No. ] and related documents filed in the Bankruptcy Court on [date], which terms and conditions generally provide that Litigation Counsel will be entitled to receive a contingency fee in an amount equal to thirty-seven and one half percent (37.5%) of the gross recovery realized through the pursuit of the Purcell Litigation Claims.  Such terms and conditions also generally provide that the Reorganized Debtor shall reimburse Litigation Counsel for all out-of-pocket expenses incurred in connection with the pursuit of the Purcell Litigation Claims on a monthly basis during the term of the Plan.

The Secured Lender has agreed, consistent with the terms and conditions set forth in the New Secured Loan Documents and contingent upon the entry by the Bankruptcy Court of a final order confirming this Plan in a form reasonably acceptable to Secured Lender, to advance up to $350,000 in new secured financing to the Reorganized Debtor through the New Secured Loan, which shall be secured by a first-priority perfected security interest in all of the personal property of the Reorganized Debtor, including the Purcell Litigation Claims and all other Causes of Action. The Reorganized Debtor will use the New Secured Loan (i) to pay Administrative Claims and Priority Claims, (ii) to fund its business operations during the term of the Plan, including reimbursement of out-of-pocket expenses incurred by Litigation Counsel, and (iii) to create a reserve to provide for payment of the Guaranteed Distribution at the conclusion of the three-year term of the Plan.  The Secured Lender may agree (but is not required) to advance additional funds to the Reorganized Debtor in connection with the New Secured Loan on terms that are mutually agreeable to the Secured Lender and the Reorganized Debtor following confirmation of the Plan.

The funding available to the Reorganized Debtor through the New Secured Loan will provide for payment of all Administrative Claims and Priority Claims upon confirmation of the Plan and will provide for payment of the Guaranteed Distribution upon the conclusion of the three-year term of the Plan.  All proceeds of any recovery on the Purcell Litigation Claims or other Causes of Action during the three-year term of the Plan shall be applied in the following order of priority: first to payment of all contingency fee amounts due and owing to Litigation Counsel relating to the Purcell Litigation Claims, second to payment of all unreimbursed out-of-pocket expenses incurred by Litigation Counsel relating to the Purcell Litigation Claims, third to payment of all indebtedness owed in connection with the New Secured Loan, fourth to payment of all outstanding business expenses incurred by the Reorganized Debtor during the three-year term of the Plan, and fifth to payment of the Litigation Proceeds Distribution.  Any such proceeds remaining after payment of the Litigation Proceeds Distribution shall be available to the Reorganized Debtor to be distributed to Holders of Equity Interests or retained for investment in future business operations of the Reorganized Debtor as the Reorganized Debtor may deem appropriate in accordance with its Articles of Incorporation, Bylaws, and other governing documents.

While recovery on the Purcell Litigation Claims is uncertain as to both timing and amount, the Debtor believes that the following projections represent a reasonable estimate of the Reorganized Debtor's projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) during the three-year term of the Plan, assuming that there is a recovery on the Purcell Litigation Claims during such time.

| Total Recovery on Purcell Litigation Claims: | | $17,500,000.00 |
| --- | --- | --- |
| | | |
| Less: | | |
| | Litigation Counsel Contingency Fee (37.5%): | $6,562,500.00 |
| | Unreimbursed Litigation Expenses: | $100,000.00 |
| | Repayment of New Secured Loan: | $1,500,000.00 |
| | Unpaid Business Expenses: | $100,000.00 |
| | | |
| Projected Disposable Income: | | $9,237,500.00 |

The above projections assume that the Reorganized Debtor will pursue the Purcell Litigation Claims to the entry of a final judgment during the three-year term of the Plan and will recover an amount close to the full value of such claims. The above projections also assume the Reorganized Debtor will be able to reach an agreement with the Secured Lender following confirmation of the Plan, if necessary, to increase the amount of the Secured Loan to pay litigation expenses and other business expenses incurred by the Reorganized Debtor during the three-year term of the Plan. In this scenario, the Projected Disposable Income available to the Reorganized Debtor during the three-year term of the Plan would be sufficient to pay all anticipated Allowed Claims.

Notwithstanding the foregoing projections, it is possible that the Reorganized Debtor will choose to settle and compromise the Purcell Litigation Claims in exchange for payment of a reduced amount prior to the conclusion of such litigation, which would reduce the Disposable Income available to pay Allowed Claims and may result in only partial payment of Allowed Claims. Nothing in this Plan obligates the Reorganized Debtor to pursue the Purcell Litigation Claims to the entry of a final judgment or precludes the Reorganized Debtor from accepting a reduced amount in satisfaction of the Purcell Litigation Claims through a settlement or other compromise. Furthermore, nothing in this Plan precludes the Reorganized Debtor from abandoning the Purcell Litigation Claims in the event the Reorganized Debtor determines it is not economically feasible to continue its pursuit of such claims. As such, it is possible that there will be no recovery on the Purcell Litigation Claims during the three-year term of the Plan or at any time thereafter. In such event, distributions to Holders of Allowed Claims under the Plan will be limited to the Guaranteed Distribution. All Plan distributions are expected to be paid on or before October 31, 2026. The Plan is a three-year plan.

## IV.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A.    Administrative Claims.

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (i) on or as soon as reasonably practicable after the Effective Date, (ii) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (iii) upon such other terms as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other

documents related to such transactions, and Holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

### 1. Bar Date for Administrative Claims.

Except as otherwise provided herein, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order no later than 45 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor or their Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Reorganized Debtor in accordance with the Local Rules.

### 2. Professional Compensation and Reimbursement Claims.

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; *provided* that the Reorganized Debtor shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Confirmation Date.  Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party in accordance with the Local Rules. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.  Each Holder of an Allowed Fee Claim shall be paid by the Reorganized Debtor in Cash within ten (10) Business Days of entry of the order approving such Allowed Fee Claim.

### B. Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (ii) Cash in an amount agreed to by the Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (iii) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than three (3) years after the Petition Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtor and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

### V. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS

### A. Summary of Classifications and Claims.

This Section classifies Claims against the Debtor – except for Administrative Claims and Priority Tax Claims, which are not classified – for all purposes, including voting, confirmation, and distribution under the Plan. A Claim against the Debtor is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of the Claim against the Debtor falls within a different Class description, the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims and Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Claim of NVF, LLC | Impaired | Entitled to Vote |
| Class 2 | Unsecured Claim of N9 Advisors, LLC | Impaired | Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Equity Interests | Unimpaired | Not Entitled to Vote |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM AGAINST THE DEBTOR OR THE ESTATE THAT IS NOT AN ALLOWED CLAIM.**

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding a Claim may have against the Debtor or the Estate. This treatment supersedes and replaces any agreements or rights that any Holder of a Claim may have with or against the Debtor, the Estate, or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

**B.    Classification and Treatment of Claims and Equity Interests.**

**1.    Class 1 – Secured Claim of NVF, LLC.**

Classification: Class 1 consists of the Allowed Secured Claim of the Secured Lender, which is estimated to be approximately $225,000 and is secured by a perfected security interest in all of the personal property of the Debtor.

Treatment:  On the Effective Date, the Secured Lender, as a Holder of an Allowed Secured Claim, shall receive, in full satisfaction, settlement, release and exchange for its Allowed Secured Claim, payments from and performance by Reorganized Debtor under the New Secured Loan according to the terms and conditions of the New Secured Loan Documents. The New Secured Loan will be evidenced by the New Secured Note, which will be executed by Reorganized Debtor and be payable to the order of the Secured Lender.  The New Secured Note will be in the aggregate original principal amount of $575,000 (which may be increased by future advances upon agreement of Secured Lender and Reorganized Debtor) and shall replace and supersede all indebtedness and

obligations owed by the Debtor or Reorganized Debtor in connection with the NVF Loan. Upon the Effective Date, the New Secured Note shall be the obligation of the Reorganized Debtor and shall be secured by an automatic, first priority lien in and against all assets of the Reorganized Debtor, the Purcell Litigation Claims and all other Causes of Action. No entity, including the Reorganized Debtor, shall have any claims against Secured Lender relating in any way to the Debtor, Reorganized Debtor, nor any defenses with respect to the New Secured Note or other New Secured Loan Documents or the interests of Secured Lender in the collateral for the New Secured Loan. Upon the occurrence of either an uncured Event of Default with respect to this Plan or an uncured event of default by the Debtor or Reorganized Debtor under the New Secured Loan Documents (or both), Secured Lender shall have the right upon written notice to the Debtor or Reorganized Debtor, but not the obligation, to immediately take possession and ownership of all collateral for the New Secured Loan free and clear of all claims, liens, and other encumbrances asserted by any third party. Such right shall be in addition to any other rights or remedies that Secured Lender may have under the New Secured Loan Documents or applicable law.

Voting: Class 1 is an Impaired Class. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

2. **Class 2 – Unsecured Convertible Promissory Note Payable to N9 Advisors, LLC.**

Classification: Class 2 consists of the Unsecured Claim held by the N9 Advisors, LLC, which is estimated to be approximately $3,600,000.

Treatment: Except to the extent that a Holder of an Allowed Class 2 Claim agrees to a less favorable treatment, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim, if any, shall, along with each Holder of an Allowed Class 3 Claim, receive on or before the Distribution Date, or as soon thereafter as reasonably practicable, (i) its Pro Rata share of the Litigation Proceeds Distribution or (ii) its Pro Rata Share of the Guaranteed Distribution, whichever may apply, up to an amount that shall not exceed the Allowed amount of each such Class 2 Claim exclusive of all interest, fees, penalties, and other charges that may accrue after the Petition Date. Alternatively, in the event any holder of an Allowed Class 2 Claim elects or is compelled by order of the Bankruptcy Court to convert its Claim to an Equity Interest, such Allowed Class 2 Claim shall be treated as a Class 4 Equity Interest.

Voting: Class 2 is an Impaired Class. Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3. **Class 3 – General Unsecured Claims.**

Classification: Class 3 consists of all General Unsecured Claims against the Debtor that are not included in Class 2. The total amount of such claims is presently unknown but is estimated to be approximately $1,700,000.

Treatment: Except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim, if any, shall along with each Holder of an Allowed Class 2 Claim, receive on or before the

- 18 -

Distribution Date, or as soon thereafter as reasonably practicable, (i) its Pro Rata share of the Litigation Proceeds Distribution or (ii) its Pro Rata Share of the Guaranteed Distribution, whichever may apply , up to an amount that shall not exceed the Allowed amount of each such Class 3 Claim exclusive of all interest, fees, penalties, and other charges that may accrue after the Petition Date.

Voting:  Class 3 is an Impaired Class.  Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### 4.    Class 4 – Equity Interests in the Debtor.

Classification:  Class 4 consists of the Holders of all Equity Interests in the Debtor.

Treatment:  Except to the extent that a Holder of an Allowed Class 4 Equity Interest agrees to a less favorable treatment, each Holder of an Allowed Class 4 Equity Interest shall receive on the Effective Date, or as soon thereafter as reasonably practicable, New Equity Interests consisting of shares of stock in the Reorganized Debtor in the same amount and same class of shares that each Holder of an Allowed Class 4 Equity Interest held in the Debtor as of the Petition Date.

Voting:  Class 4 is an Unimpaired Class.  Holders of Class 4 Interests are not entitled to vote to accept or reject the Plan.

## VI.    ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Deemed Acceptance of the Plan.

Class 4 is an Unimpaired Class and is deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### B.    Voting Classes.

Each Holder of an Allowed Claim or Interest as of the Record Date in each of the Voting Classes (Classes 1, 2, and 3) shall be entitled to vote to accept or reject the Plan.

### C.    Acceptance by Impaired Classes of Claims.

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

### D.    Confirmation in Spite of Rejection of Plan.

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### E.    Elimination of Vacant Classes.

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Executory Contracts and Unexpired Leases.

#### 1.    Assumption of Agreements.

On the Effective Date, the Reorganized Debtor shall assume all executory contracts and unexpired leases of the Debtor, if any, listed on the Schedule of Assumed Agreements attached hereto as <u>Exhibit A</u>.

The Debtor reserves the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to: (i) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (ii) add any executory contract or unexpired lease and provide for its assumption under the Plan. The Debtor will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to the agreement affected by the amendment.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

#### 2.    Cure Payments.

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan (a "<u>Cure Payment</u>"), is identified on the Schedule of Assumed Agreements. Unless the parties mutually agree to a different date, such payment shall be made in cash, fourteen (14) days following the later of: (i) the Effective Date and (ii) entry of a Final Order resolving any dispute regarding (a) the amount of any Cure Payment, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, and/or (c) any other matter pertaining to assumption. Pending the Court's ruling on any such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Reorganized Debtor unless otherwise agreed by the parties or ordered by the Court.

#### 3.    Objections to Assumption/Cure Payment Amounts.

Any entity that is a party to an executory contract or unexpired lease that will be assumed under the Plan and that objects to such assumption (including the proposed Cure Payment) must file with the Court and serve upon parties entitled to notice a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be Filed and served by the deadline fixed by the Court for such objection. Any entity that fails to timely File

- 20 -

and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by an entity that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination as to the amount of any cure and compensation due under the executory contract or unexpired lease, and that the Reorganized Debtor has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

### 4.    Resolution of Claims Relating to Contracts and Leases.

Payment of the Cure Payment established under the Plan, by the Confirmation Order or by any other order of the Court, with respect to an assumed executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or post-petition arrearage or other Claim against the Debtor (including any asserted in a Filed Proof of Claim or listed in the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of Claim or the Schedules).  Upon the tendering of the Cure Payment, any such Filed or scheduled Claim shall be disallowed, without further order of the Court or action by any party.

### B.    Rejections of Executory Contracts and Unexpired Leases.

### 1.    Rejected Agreements.

On the Effective Date, all executory contracts and unexpired leases that (i) have not been previously assumed or rejected and (ii) that are not set forth on the Schedule of Assumed Agreements shall be rejected. For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Court shall not be affected by the Plan.  The Confirmation Order will constitute a Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

### 2.    Bar Date for Rejection Damage Claims.

Any Rejection Damage Claim or other Claim against the Debtor for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served upon counsel to the Reorganized Debtor within 30 days after the Effective Date.  Any such Claims that are not timely Filed and served will be forever barred and unenforceable against the Debtor, the Reorganized Debtor, the Estate, and their respective property, and entities holding such Claims will be barred from receiving any distributions under the Plan on account of such untimely Claims.

### 3.    Post-petition Contracts and Leases.

Except as expressly provided in the Plan or the Confirmation Order, all contracts, leases, and other agreements that the Debtor entered into after the Petition Date will be retained by the Reorganized Debtor and will remain in full force and effect following the Effective Date.

## VIII.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Means of Effectuating the Plan.

1. **Funding for the Plan.**

The funds necessary to satisfy the Reorganized Debtor's obligations and to ensure the Reorganized Debtor's continuing performance under the Plan after the Effective Date will be obtained from: (i) cash on hand, if any; (ii) the New Secured Loan; (iii) the net proceeds, if any, recovered by the Reorganized Debtor on account of the Purcell Litigation Claims or other Causes of Action; (iv) with the consent of the Secured Lender, which shall not be unreasonably withheld, any reserves established by the Debtor; and (v) other equity contributions or financing, if any, that the Debtor may obtain on or after the Effective Date.

2. **New Corporate Existence.**

The Debtor shall continue to exist after the Effective Date as a separate corporate entity with all the powers of a corporation under the laws of the State of Florida and pursuant to the Articles of Incorporation and Bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such Articles of Incorporation or Bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

3. **Vesting of Assets.**

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, all Causes of Action) and any property acquired by the Debtor pursuant hereto shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. Except as may be provided herein, on and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claim or Cause of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor shall pay the charges that it incurs after the Effective Date for Retained Professionals' fees, disbursements, expenses, or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

4. **Issuance and Distribution of New Equity Interests.**

On or immediately after the Effective Date, the Reorganized Debtor shall issue or reserve for issuance all securities required to be issued pursuant hereto. The New Equity Interests issued under the Plan are issued under Section 1145 of the Bankruptcy Code shall be subject to all applicable state and federal laws. The Debtor makes no representation as to any restriction or requirement that may or may not apply to the sale or exchange of New Equity Interests pursuant to such laws. All of the New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Article VIII hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

**5.      Securities Registration Exemption.**

The New Equity Interests to be issued to the Debtor's Equity Interest Holders will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

**6.      Certificate of Incorporation and Bylaws.**

The Articles of Incorporation and Bylaws of the Debtor may be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Reorganized Debtor.  On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file a new Articles of Incorporation with the Nevada Secretary of State, which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities.  After the Effective Date, the Reorganized Debtor may file a new, or amend and restate its existing, Articles of Incorporation, Bylaws and other constituent documents as permitted by the relevant state corporate law.

**7.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.**

The Debtor or the Reorganized Debtor, as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto. The secretary and any assistant secretary of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or partners of the Debtor, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the issuance of New Equity Interests.

# IX.      DISTRIBUTIONS UNDER THE PLAN

**A.      Distributions for Claims Allowed as of the Effective Date.**

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, the Reorganized Debtor shall make distributions under the Plan on account of Claims Allowed before the Effective Date on the Distribution Date, or as soon thereafter as reasonably practicable.

### B.    Distributions on Account of Claims Allowed After the Effective Date.

### 1.    Payments and Distributions on Disputed Claims.

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date but before the Distribution Date shall be made on the Distribution Date, or as soon thereafter as reasonably practicable.  Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of any Disputed Claim that becomes an Allowed Claim after the Distribution Date shall be made within 30 days after such Disputed Claim becomes an Allowed Claim.

### 2.    Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims.

### C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions.

### 1.    Record Date for Distributions.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

### 2.    Delivery of Distributions in General.

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

**3.      Distributions by Distribution Agents.**

The Debtor and the Reorganized Debtor, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  As a condition to serving as a Distribution Agent, a Distribution Agent must (i) affirm its obligation to facilitate the prompt distribution of any documents, (ii) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder, and (iii) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent.

The Distribution Agents, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Debtor and the Reorganized Debtor, to the fullest extent permitted by law for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Distribution Agents solely in their capacity as such; provided, however, that the Debtor and the Reorganized Debtor shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

**4.      Minimum Distributions.**

Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $25.00 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (i) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than $100.00, unless such distribution is a final distribution; or (ii) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $25.00, which shall be treated as an undeliverable distribution under Article IX.C.5 below.

**5.      Undeliverable Distributions.**

**a.      Holding of Undeliverable Distributions.**

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor (or their Distribution Agent) are

notified in writing of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor, subject to Article IX.C.5(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

### b. **Failure to Claim Undeliverable Distributions.**

No later than 180 days after the Distribution Date, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of undeliverable distributions. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtor of such Holder's then current address in accordance herewith within the latest of (i) 60 days after the attempted delivery of the undeliverable distribution or (ii) 60 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Reorganized Debtor or their property. In such cases, (i) any Cash held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

### c. **Failure to Present Checks.**

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Reorganized Debtor may File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list may be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

### D. **Compliance with Tax Requirements/Allocations.**

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the

distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

### E. Timing and Calculation of Amounts to Be Distributed.

On the Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of when such distributions are delivered.

### F. Setoffs.

The Debtor and the Reorganized Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any Claims, Equity Interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such Claims, Equity Interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved Claims, Equity Interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claims, Equity Interests, rights, and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

### X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A. Resolution of Disputed Claims.

#### 1. Allowance of Claims.

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation

Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim. All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

**2.      Prosecution of Objections to Claims.**

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; provided, however, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.      Claims Estimation.**

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Claim pursuant to applicable law and (ii) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**4.      Expungement or Adjustment to Claims without Objection.**

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without an objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**5.      Deadline to File Objections to Claims.**

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

**B.      Disallowance of Claims.**

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

### C.    Amendments to Claims.

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

## XI.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to Confirmation.

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order, which shall be in a form reasonably acceptable to the Secured Lender.

### B.    Conditions Precedent to Consummation.

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XI.C hereof.

1.    The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor.

2.    The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, is authorized and

directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

3.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

## C.      Waiver of Conditions.

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article XI may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## D.      Effect of Non-Occurrence of Conditions to Consummation.

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

## XII.    SETTLEMENT RELEASE AND RELATED PROVISIONS

### A.      Compromise and Settlement.

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (i) in the best interests of the Debtor, its estate and all Holders of Claims and Equity Interests, (ii) fair, equitable and reasonable, (iii) made in good faith, and (iv) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised, and settled pursuant hereto.

In accordance with the provisions of this Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (i) the Reorganized Debtor may, in its sole and absolute

discretion, compromise and settle Claims against them and (ii) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

### B.    Preservation of Rights of Action.

#### 1.    Maintenance of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate, or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case.

#### 2.    Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Plan or the Confirmation Order, or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

#### 3.    Third Party Release

EFFECTIVE AS OF THE CONFIRMATION DATE, THE DEBTOR, ALL CURRENT OFFICERS AND DIRECTORS OF THE DEBTOR AS OF THE EFFECTIVE DATE, THE SECURED LENDER, AND ALL ATTORNEYS AND OTHER PROFESSIONALS EMPLOYED BY THE FOREGOING SHALL RECEIVE A FULL RELEASE FROM THE DEBTOR AND ITS ESTATE FROM ANY AND ALL CAUSES OF ACTION THAT MIGHT BE ASSERTED ON BEHALF OF THE DEBTOR OR ITS ESTATE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE OF THE PLAN, WHETHER IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, INCLUDING, WITHOUT LIMITATION, IN ANY WAY RELATED TO THE CHAPTER 11 CASE, THE DEBTOR'S RESTRUCTURING, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN OR ANY OTHER ACT OR OMISSION RELATED THERETO OCCURRING ON OR BEFORE THE CONFIRMATION DATE; PROVIDED, HOWEVER, THAT THE FOREGOING RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CAUSES OF ACTION (1)

OF THE DEBTOR OR ITS ESTATE FOR ANY CLAIMS ARISING FROM WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; (2) CLAIMS AGAINST ANY FORMER OFFICER OR DIRECTOR OF THE DEBTOR; OR (3) CLAIMS THAT MAY BE ASSERTED BY THIRD PARTIES AGAINST PERSONS OR ENTITIES OTHER THAN THE DEBTOR.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASES ARE (1) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS; (2) FAIR, EQUITABLE AND REASONABLE; AND (3) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

## XIII.   EFFECT OF PLAN CONFIRMATION BINDING NATURE OF THE PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

### A.    Discharge Injunction.

The rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever arising prior to the Effective Date against the Debtor and the Estate, including any interest accrued on such Claims from and after the Petition Date. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, (i) the Debtor, the Estate, the Reorganized Debtor and their respective property are discharged and released hereunder to the fullest extent permitted by Bankruptcy Code sections 524 and 1141 from all Claims and rights against them that arose before the Effective Date, including all debts, obligations, demands, and liabilities, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), regardless of whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed, (b) a Claim based on such debt is allowed pursuant to Bankruptcy Code section 502, or (c) the Holder of a Claim based on such debt has or has not accepted the Plan; (ii) any judgment underlying a Claim discharged hereunder is void; and (iii) all entities are precluded from asserting against the Debtor, the Estate, the Reorganized Debtor and their respective property, any Claims or rights based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a Claim against the Debtor, the Estate, or the Reorganized Debtor, that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that otherwise is discharged pursuant to the Plan, are permanently enjoined from taking any of the following actions on account of any such discharged Claim, (the "Permanent Injunction"): (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, the Reorganized Debtor or their respective property,

that is inconsistent with the Plan or the Confirmation Order; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Reorganized Debtor or their respective property, other than as expressly permitted under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against property of Debtor, the Estate, the Reorganized Debtor, or their respective property, other than as expressly permitted under the Plan; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of Bankruptcy Code section 1141.  Any person or entity injured by any willful violation of such Permanent Injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

## XIV.   RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.      Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.      Resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

8.     Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.     Hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.     Issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.     Enforce any provision hereof;

12.     Enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.     Resolve any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan; and

14.     Enter an order concluding the Chapter 11 Case.

## XV.     MISCELLANEOUS PROVISIONS

### A.     Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due.

### B.     Modification of Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (ii) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### C.     Revocation of Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtor revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other

Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

### D. Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### E. Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (ii) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

### F. Section 1146 Exemption.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

### G. Further Assurances.

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### H. Severability.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtor, the Reorganized Debtor or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and

provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## I.    Service of Documents.

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

> Banq Inc.
> Attn: Joshua Sroge
> 7575 W. Washington Ave.
> Suite 127-118
> Las Vegas, Nevada 89128

> with copies to:

> Shea Larsen PC
> Attn: Bart K. Larsen, Esq.
> 1731 Village Center Circle, Suite 150
> Las Vegas, Nevada 89134

## J.    Filing of Additional Documents.

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## K.    Default.

Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable party-in-interest shall notify the Debtor and Debtor's counsel of the default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) Business Days from the date of receipt of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) business days, so long as the Debtor initiates steps to cure the default within thirty (30) business days and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under this Plan, the contract(s) between the parties, and/or applicable state law without further court order or proceeding being necessary.

Dated this 13th day of June 2023.

> BANQ INC.

> /s/ *Joshua Sroge*
> By: Joshua Sroge
> Its: Chief Executive Officer

1

2

3   Prepared and Submitted by:

4   SHEA LARSEN PC

5   /s/ *Bart K. Larsen, Esq.*
    Bart K. Larsen, Esq.
6   Nevada Bar No. 8538
    1731 Village Center Circle, Suite 150
7   Las Vegas, Nevada  89134

8
    *Attorneys for Debtor Banq Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Schedule of Executory Contracts and Unexpired Leases to Be Assumed:

[to be supplemented]